UNITED STATES of America,
Plaintiff-Appellee,

v.

William Prentis TUCKER, Daisy Bell
Hughes, and Ronald H. Jackson,
Defendants-Appellants.

No. 75–1478.

United States Court of Appeals,
Fifth Circuit.

Jan. 22, 1976.
Certiorari Denied May 3, 1976.
See 96 S.Ct. 1738.

Oscar B. Goodman, Las Vegas, Nev., Floyd M. Buford, Virgil H. Shepard, Macon, Ga., for defendants-appellants.

Ronald T. Knight, U.S. Atty., O. Hale Almand, Jr., Asst. U.S. Atty., Macon, Ga., Thomas Vockrodt, Sp. Atty., U.S. Dept. of Justice, Atlanta, Ga., for plaintiff-appellee.

Before BROWN, Chief Judge, RIVES and GEE, Circuit Judges.

GEE, Circuit Judge:

William Prentis Tucker, Daisy Bell Hughes and Ronald H. Jackson were convicted and given concurrent sentences on one count of violating the five-man gambling statute, 18 U.S.C. § 1955, and one count of conspiring to do so in violation of 18 U.S.C. § 371. These convictions were based on their operation of a Macon, Georgia lottery, whose winners were determined by the total volume on the New York Stock Exchange. On appeal, they assert errors in the disposition of their pretrial motions, in the conduct of the trial, and in the substance of their convictions. Finding the entire panoply of objections to be without merit, we affirm.

## I. PRETRIAL MOTIONS

Tucker and Hughes filed a number of pretrial motions and now argue that the district court erred in handling

four of them.[1] Their first point is that the court should have suppressed the evidence obtained in a search of Hughes' house trailer and Tucker's person on their personal "Black Tuesday," December 18, 1973. Specifically, they assert that the warrants under which these searches were conducted were defective under *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and that there was no probable cause.

■ When, as here, a search warrant is issued on an affidavit reciting the tip of an unnamed informant, *Aguilar*'s familiar two-pronged test normally requires that the affidavit disclose particular facts or circumstances which justify concluding that the informant is a reliable or trustworthy person and specific facts or circumstances tending to demonstrate that the informant has gathered his information in a reliable manner. *United States v. Chavez,* 482 F.2d 1268, 1270 (5th Cir. 1973). With respect to Informants One and Three,[2] *Aguilar*'s first prong is satisfied by an explicit claim of past reliability.[3] Additionally, each informant's tip was extremely detailed, and Informant One's tip contained a declaration against penal interest. *See United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); *United States v. Chavez, supra.* *Aguilar*'s second prong is satisfied by statements that both informants obtained their information through either personal observations or personal conversations with specified participants in the lottery. Additionally, numerous details of Informant One's information were confirmed by independent police surveillance. *See Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *Gonzales v. Beto,* 425 F.2d 963 (5th Cir.), *cert. denied,* 400 U.S. 928, 91 S.Ct. 194, 27 L.Ed.2d 189 (1970). This combination of informants' tips and police observations on several occasions over a four-month period is amply sufficient to warrant a man of reasonable caution in the belief that an offense has been or is being committed, and it therefore constitutes probable cause. *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

■ Tucker and Hughes argue that the district court erred in denying their motions to compel disclosure of any electronic surveillance without requiring of the government a formal denial of unlawful surveillance. These motions were accompanied by counsels' memoranda stating, "Defendants allege that the Government *may* have conducted illegal electronic surveillance on them and their attorneys, both past and present." (emphasis added). Tucker and Hughes rely on 18 U.S.C. § 3504(a)(1), which provides:

> [U]pon a claim by a party aggrieved that evidence is inadmissible because it is the primary product of an unlawful act or because it was obtained by the exploitation of an unlawful act, the opponent of the claim shall affirm or

---

1. In argument, appellants' counsel also contended that the district court erred in denying motions for bills of particulars and in permitting noncompliance with the court's order requiring the prosecution to disclose inducements to co-conspirators or prosecution witnesses. The denial of a bill of particulars is reversible only on a showing of prejudice or a clear abuse of discretion by the trial court. *E.g., United States v. Bearden,* 423 F.2d 805, 809 (5th Cir.), *cert. denied,* 400 U.S. 836, 91 S.Ct. 73, 27 L.Ed.2d 68 (1970). Appellants have not made such a showing. While the record indicates that the government never responded to the order requiring disclosure, nothing in the record indicates that its silence was a noncompliance with the order.

2. The district court suppressed evidence derived from Informant Two's information. The government does not appeal that decision, and appellants do not allege that any evidence was admitted in violation of that order.

3. The FBI agents' affidavit stated that Informant One had been contacted at least ten times in the previous six months and in each instance had provided information which had proven accurate "through contact with other sources and/or independent investigation." A comparable statement is made about Informant Three.

deny the occurrence of the alleged unlawful act . . ..

We hold that the district court was correct in ruling that Tucker and Hughes failed to make a "claim" sufficient to trigger this statute, and therefore the denial of their motions was proper.

■ This circuit has already defined the specificity required in a statutory "claim" of surveillance of an attorney, *Beverly v. United States,* 468 F.2d 732, 752 (5th Cir. 1972), and appellants' simple motions and briefs are clearly insufficient. However, this circuit has never defined what is required of a criminal defendant's own "claim" of surveillance. We tend to agree with the Second, Ninth and D.C. Circuits[4] that a "mere assertion" of unlawful surveillance is enough to trigger the government's obligation to affirm or deny. However, such an "assertion" must be, at a minimum, a positive statement that unlawful surveillance has taken place. A generalized motion based on the possibility of such surveillance, which is all that is present here, is not a "claim" within the meaning of 18 U.S.C. § 3504(a)(1).

Our recognition that less specificity is required of a defendant claiming surveillance of himself than is required when he claims surveillance of his attorney should not be construed as approval of naked assertions of surveillance. Nor does it trench in any way upon our holding in *United States v. Stevens,* 510 F.2d 1101 (5th Cir. 1975), that the adequacy of the required government denial depends on the specificity of the allegation of illegality. As in the area of attorney surveillance, the district court retains wide latitude to strike the necessary balance between due regard for a defendant's constitutional rights and the right of the United States to proceed with reasonable promptness in its investigations and prosecutions. *See Beverly v. United States, supra.*[5]

■ Tucker and Hughes filed pretrial motions to obtain disclosure of the grand jury records of voting and the grand jury testimony of government witnesses who were not called at trial. A defendant must show "particularized need" to justify infringement of the secrecy surrounding a grand jury. *Posey v. United States,* 416 F.2d 545 (5th Cir. 1969), *cert. denied, Snowden v. U. S.,* 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127 (1970).[6] Appellants' unsubstantiated assertions of improprieties before the grand jury do not approach such a showing. *United States v. Howard,* 433 F.2d 1 (5th Cir. 1970), *cert. denied,* 401 U.S. 918, 91 S.Ct. 900, 27 L.Ed.2d 819 (1971). The accompanying motions to dismiss those counts of the indictment allegedly not approved by a majority of the grand jury were likewise properly denied.

■ Finally, appellants argue that the district court erred in denying them access to the jury lists before the day of trial. The timing of disclosure of jurors is up to the trial court. *Stone v. United States,* 324 F.2d 804 (5th Cir. 1963), *cert. denied,* 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659 (1964). 28 U.S.C. § 1863(b)(8), which authorizes delayed disclosure of the jury lists when required by the "interests of justice," does not eliminate the court's discretion, and a

---

4. *United States v. Vielguth,* 502 F.2d 1257 (9th Cir. 1974); *United States v. Toscanino,* 500 F.2d 267 (2d Cir. 1974); *In re Evans,* 146 U.S. App.D.C. 310, 452 F.2d 1239 (1971), *cert. denied,* 408 U.S. 930, 92 S.Ct. 2479, 33 L.Ed.2d 342 (1972).

5. In view of our disposition of this issue, we do not reach the issues of the propriety or sufficiency of the affidavits of denial submitted by the government to this court. However, we note that these affidavits are far more limited and equivocal in their denials of surveillance than anything yet accepted as an adequate statutory "denial." *See United States v. Vielguth, supra* n. 4 (Chambers, J., dissenting).

6. The Jencks Act, 18 U.S.C. § 3500 (Supp. 1975), amending 18 U.S.C. § 3500 (1969), is not pertinent to these pretrial motions because it requires disclosure only after a witness testifies on direct examination. Appellants do not contend that the Jencks Act was violated in this case.

showing of arbitrariness is required to reverse the trial court's decision. *United States v. Stokes,* 506 F.2d 771, 777 (5th Cir. 1975). Appellants make no such showing.

## II. CONDUCT OF TRIAL

All three appellants forcefully object to the trial judge's conduct in furnishing each juror with a pencil and a photocopy of the indictment before trial. They argue that allowing the jury to retain a copy of the indictment throughout trial as a "script" of the proceedings was prejudicial. Although we are mildly skeptical of this procedure, the potential for prejudice was avoided here by specific instructions, delivered shortly before and repeated immediately after the copies of the indictment were distributed, to the effect that the indictment was not evidence.[7] Since it is permissible for a properly instructed jury to have copies of the indictment during deliberation,[8] the procedure followed here is permissible; however, we reiterate the need for full and timely cautionary instructions.

Appellants also object to the trial judge's decision to limit their peremptory challenges to the minimum of ten required by Fed.R.Crim.P. 24(b). Although they recognize that the decision to grant additional peremptories is a matter within the trial judge's discretion, they argue that there was an abuse of discretion here. The record indicates that the trial judge initially granted additional peremptories to the defendants and to the government but that he withdrew all additional challenges when de-

fense counsel argued that he had no authority to grant additional peremptories to the government. Assuming arguendo that defense counsel were correct in this argument,[9] it is nonetheless permissible for the parties to stipulate for additional peremptories by both sides. *E.g., United States v. Mitchell,* 384 F.Supp. 564 (D.D. C.1974). As a corollary of these principles, it is within the trial court's discretion to condition the grant of additional peremptories to the defendants upon such a stipulation. *Id.* We are convinced that this posture was the essence of the trial court's final ruling on the issue of peremptories in this case.

Finally, appellants object to several portions of the court's instructions to the jury. We view the instructions as a whole [10] and find appellants' objections to be without merit.

## III. SUBSTANTIVE CLAIMS

Appellants make a general objection to the sufficiency of the evidence, but we find the evidence to be more than sufficient when viewed in the light most favorable to the government, as required by *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). However, appellants also argue that the evidence is insufficient to establish the requisite jurisdictional fact that each defendant was a participant in the illegal gambling operation for a 30-day period. This argument rests on a misunderstanding of the jurisdictional requirements of 18 U.S.C. § 1955. Once the evidence demonstrates that the five-man/30-day jurisdictional test is met,[11] it

---

7. These timely curative instructions distinguish our case from *United States v. Baker,* 418 F.2d 851 (6th Cir. 1969), *cert. denied,* 397 U.S. 1015, 90 S.Ct. 1248, 25 L.Ed.2d 429 (1970) (distribution of copies of indictment without cautionary instruction was harmless error).

8. *United States v. Frick,* 490 F.2d 666, 671 (5th Cir. 1973), *cert. denied, Peterson v. U. S.,* 419 U.S. 831, 95 S.Ct. 55, 42 L.Ed.2d 57 (1974).

9. Their argument is based on the inferences from the last sentence of Fed.R.Crim.P. 24(b), which provides:

If there is more than one defendant, the court may allow the defendants additional peremptory challenges and permit them to be exercised separately or jointly.

10. *E.g., United States v. Cisneros,* 491 F.2d 1068 (5th Cir. 1974).

11. Here the government called five witnesses who admitted participation in this lottery for more than thirty days.

is not necessary for the conviction of one joining the enterprise that he be a participant for thirty days. *United States v. Marrifield,* 515 F.2d 877, 882 (5th Cir. 1975).

Finally, appellants' challenge to the constitutionality of 18 U.S.C. § 1955 is foreclosed by *United States v. Harris,* 460 F.2d 1041 (5th Cir.), *cert. denied,* 409 U.S. 877, 93 S.Ct. 128, 34 L.Ed.2d 130 (1972).

Affirmed.