In re GRAND JURY PROCEEDINGS.

UNITED STATES of America, Appellee,

v.

Robert Morris POSTAL, Appellant.

No. 77–2468

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Aug. 30, 1977.

Gene P. Hines, Washington, D. C., Irwin G. Lichter, Miami, Fla., for appellant.

Robert W. Rust, U. S. Atty., Patrick Sullivan, Michael P. Sullivan, Asst. U. S. Attys., Miami, Fla., for appellee.

Before GOLDBERG, CLARK and FAY, Circuit Judges.

PER CURIAM:

Appellant, Robert Postal, appeals from an adjudication of civil contempt for failure to testify before a federal grand jury after having been given use immunity under 18 U.S.C. §§ 6002, 6003.[1] Appellant was incar-

---

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

1. § 6002. Immunity generally

Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testi-

fy or provide other information in a proceeding before or ancillary to—

(1) a court or grand jury of the United States

(2) an agency of the United States, or

(3) either House of Congress, a joint committee of the two Houses, or a committee or

cerated and was denied bail pending appeal under 28 U.S.C. § 1826(a) and (b).[2]

There are four assignments of error. The principal assignment is that use immunity was insufficient to displace appellants' Fifth Amendment rights because of the possibility of prosecution in Colombia, South America. The other three assignments are (1) the trial court erred in denying appellant's motion to quash the grand jury subpoena in that the questions to be propounded to the witness were a result of a seizure effected beyond the jurisdiction of the Coast Guard, (2) the trial court erred in refusing to grant appellant adequate notice and time to prepare for the contempt hearing and (3) the trial judge erred in not recusing himself pursuant to appellant's affidavit of bias. We affirm.

On July 12, 1977, defendant appeared, pursuant to subpoena, before the Grand Jury in the Fort Lauderdale Division of the Southern District of Florida. The Grand Jury was conducting an investigation into the circumstances surrounding the possession, transportation and importation of 8,300 pounds of marijuana seized by the United States Coast Guard after search of a foreign vessel, the LA ROSA, registered in the Cayman Islands. Appellant and two others were aboard the vessel.

This same Grand Jury had previously indicted all three for importation of marijuana, possession with intent to distribute, and conspiracy to commit the substantive offenses. After a trial before Judge C. Clyde Atkins,[3] the substantive charges were dismissed and they were all convicted of the

a subcommittee of either House, and the person presiding over the proceeding communicates to the witness an order issued under this part, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.

§ 6003. Court and grand jury proceedings (a) In the case of any individual who has been or may be called to testify or provide other information at any proceeding before or ancillary to a court of the United States or a grand jury of the United States, the United States district court for the judicial district in which the proceeding is or may be held shall issue, in accordance with subsection (b) of this section, upon the request of the United States attorney for such district, an order requiring such individual to give testimony or provide other information which he refuses to give or provide on the basis of his privilege against self-incrimination, such order to become effective as provided in section 6002 of this part.

(b) A United States attorney may, with the approval of the Attorney General, the Deputy Attorney General, or any designated Assistant Attorney General, request an order under subsection (a) of this section when in his judgment—

(1) the testimony or other information from such individual may be necessary to the public interest; and

(2) such individual has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self-incrimination.

**2.** § 1826. Recalcitrant witnesses

(a) Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to testify or provide other information, including any book, paper, document, record, recording or other material, the court, upon such refusal, or when such refusal is duly brought to its attention, may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony or provide such information. No period of such confinement shall exceed the life of—

(1) the court proceeding, or

(2) the term of the grand jury, including extensions, before which such refusal to comply with the court order occurred, but in no event shall such confinement exceed eighteen months.

(b) No person confined pursuant to subsection (a) of this section shall be admitted to bail pending the determination of an appeal taken by him from the order for his confinement if it appears that the appeal is frivolous or taken for delay. Any appeal from an order of confinement under this section shall be disposed of as soon as practicable, but not later than thirty days from the filing of such appeal.

**3.** The trial and conviction occurred before Postal ever received the grand jury subpoena.

conspiracy count. Appeals are pending in this court.

On July 11 and 12, 1977, appellant filed with the District Court various motions and memoranda concerning all issues and defenses which would be raised in the event of a subsequent contempt hearing. A motion for continuance was filed on July 12, 1977, in which appellant gave notice of his intention to invoke the Fifth Amendment and refuse to testify even with a grant of use immunity.

Appellant appeared before the Grand Jury that same day represented by counsel and refused to answer one question, in particular, "How much money did you have invested in the marijuana aboard the LA ROSA, seized by the Coast Guard?"

At a 4:00 P. M. hearing that afternoon, appellant was granted use immunity upon motion of the Government. Appellant returned to the Grand Jury room and again refused to testify.

An hour later the Government commenced a civil contempt hearing before Judge Norman Roettger over appellant's objection that he had not been given adequate prior notice and opportunity to prepare for the hearing. Judge Roettger overruled this objection stating that he found "[t]here was no surprise."

■ The Supreme Court has not reached the constitutional ". . . claim that a grant of immunity cannot supplant the Fifth Amendment privilege with respect to an individual who has a real and substantial fear of foreign prosecution." *Zicarelli v. New Jersey Investigation Commission,* 406 U.S. 472, 478, 92 S.Ct. 1670, 1675, 32 L.Ed.2d 234 (1972). The decision in *Zicarelli* did note that ". . . the [Fifth Amendment] privilege protects against real dangers, not remote and speculative possibilities." [Footnote omitted]. *Supra,* p. 478, 92 S.Ct. p. 1675.

Appellant asserts several factors which expose him to a "real danger" of foreign prosecution. First he submits that answering questions asked before the Grand Jury would tend to incriminate him under Colombian law. Second, he urges that there is a reasonable fear of prosecution under Colombian law and that, third, this testimony might be used against him in such a prosecution. Last he asserts the Fifth Amendment privilege protects him from testifying.

There is no doubt that if allegedly incriminating testimony and evidence was available to the Colombian authorities, charges under Colombian drug laws could be brought against Postal and extradition requested.[4] However, the key words above are "if . . . available". This Circuit held in *In Re Tierney,* 465 F.2d 806 (5th Cir. 1972), that:

. . . because of the secrecy of the grand jury proceedings no substantial risk of foreign prosecution is posed. Rule 6(e), F.R.Crim.P., provides for this secrecy. The same court which grants immunity is the court which prevents violation of the secrecy. The government represented that it could not violate the secrecy, even under the first sentence of allowing it to disclose matters in the performance of its duties, without a court order. This is answer enough to the contention of appellants that the government might

4. Appellant cites numerous provisions of Colombian law which might provide the basis for a criminal prosecution of Appellant. Article 37 of Decree 1188 of June 25, 1974 (published in The Diario Official of July 8, 1974) prohibits cultivation and maintenance of plants from which one could extract marijuana without permission of competent authority. Violation is punishable by imprisonment of from two to eight (2–8) years, plus a fine from 100 to 10,000 pesos. Article 38 proscribes the import, *export,* storage, maintenance, *possession,* manufacture, sale, offer, *acquisition,* or supply of marijuana without permission of competent authority. Such activity is punishable by imprisonment of from three to twelve (3–12) years, plus a fine of 5,000 to 50,000 pesos.

Further, Article 208 of the Colombia Penal Code makes conspiracy to commit the above offenses punishable by five to fourteen (5–14) years imprisonment. Proposing to another the commission of a crime is punishable under Article 211 by imprisonment up to three (3) years.

Articles 16, 17 and 19 of the Code make attempting the commission of a crime or aiding or abetting the commission thereof a criminal offense, each one punishable by a term of imprisonment for several years.

disclose their testimony. [Footnote omitted].

*In Re Tierney, supra,* p. 811. Thus, in this case, we find there is no real danger of foreign prosecution.

■ The motion to quash based on a seizure which was effected allegedly beyond the jurisdiction of the Coast Guard is without merit.[5] Appellant attempts to draw a distinction from the Supreme Court case which provides that a witness summoned to appear and testify before a grand jury may not refuse to answer questions on the ground that they are based on evidence obtained from an unlawful search and seizure. *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974).

> [The grand jury] is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime. [Citation omitted]

*Calandra, supra,* p. 343, 94 S.Ct. p. 617.

Whether appellant's claim is one of illegal search and seizure or the proper jurisdiction of the Coast Guard (which we decline to decide here), *Calandra* controls. The motion to quash was properly denied.

■ Appellant next suggests that he was not given adequate notice and time to prepare for the contempt hearing citing *Harris v. United States,* 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965). In this case, appellant had adequate time to prepare for the contempt hearing. The defendant was subpoenaed more than a month prior to his scheduled Grand Jury appearance. On that scheduled date, July 12, 1977, appellant's counsel filed numerous motions, which included a memorandum of law in which the above issues were exhaustively briefed. Appellant's motion for continuance states in part:

> The witnesses intend to invoke their Fifth Amendment rights before the Grand Jury. If granted immunity, they still intend to invoke their Fifth Amendment rights. Undoubtedly, the Government will seek to have the witnesses held in contempt. The defenses that the witnesses will raise are set forth in their simultaneously filed motion to quash. (R. 81)

The realities of this situation indicate appellant knew exactly what was going to happen and was prepared to raise all applicable issues and defenses. Appellant's suggestion that in this case Judge Roettger should have set a hearing for another date is without merit.

■ Appellant's motion to recuse Judge Roettger is insufficient in that the alleged bias and prejudice, to be disqualifying, must stem from an extrajudicial source and that prejudice and bias must result in an opinion on the merits on some basis other than what the Judge was exposed to in his participation in this case. *Davis v. Board of School Commissioners of Mobile County,* 517 F.2d 1044 (5th Cir. 1975) *cert denied,* 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188.

On the basis of the foregoing, we affirm the judgment of the district court.

---

5. This issue of whether there was an illegal seizure is presently awaiting decision by the Fifth Circuit.