**UNITED STATES of America, Appellee,**

v.

**Richard B. MARX, Appellant.**

**No. 76–1816.**

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 17, 1977.
Decided April 28, 1977.

Steven G. Glucksman, Miami, Fla. (Richard B. Marx, Miami, Fla., on brief), for appellant.

Robert F. McDermott, Jr., Asst. U. S. Atty., Alexandria, Va. (William B. Cummings, U. S. Atty., Stephen R. Pickard, Asst. U. S. Atty., Alexandria, Va., on brief), for appellee.

Before BUTZNER and HALL, Circuit Judges, and COPENHAVER, District Judge for the Southern District of West Virginia, sitting by designation.

BUTZNER, Circuit Judge:

Richard B. Marx appeals the order of the district court holding him in criminal contempt and imposing a $100 fine for failure to appear at a trial as defense counsel. Marx contends that his conduct was not contemptuous, that his notice of the charge did not specify criminal contempt, and that his hearing was inadequate. We affirm the district court's judgment.

Both Marx, whose office is in Florida, and his client were absent from the trial on Monday, April 26, 1976. Local counsel informed the court that, on the previous Friday afternoon, Marx phoned that he was telegramming the court that he would not appear for trial, that his client's check for his legal fees had bounced, and that he was withdrawing from the case.[1] Confirming this explanation for Marx's absence, the assistant United States attorney stated that he, too, had talked with Marx on Friday afternoon. While they were discussing a plea bargain, Marx told him that he had not been paid, and the prosecutor replied, "as far as everyone is concerned you are still the attorney of record." He also told Marx that he would be in his office Saturday and Sunday. He heard nothing further until shortly before court convened on Monday, when Marx phoned that he would not appear because he had not received funds to cover his travel expenses. The court tried and convicted Marx's client, but it subsequently acknowledged that the validity of its judgment was doubtful because of local counsel's lack of preparation.[2]

The court issued an order to show cause why Marx should not be held in contempt for failure to appear at the trial. At the contempt hearing ten days later, Marx spoke in his own defense. He explained that his client became ill in his office on Wednesday or Thursday prior to the trial and then phoned on Friday night and again on Saturday that he would enter a hospital before his trial on Monday.[3] His client also said that he had already told local counsel that he would enter the hospital.[4] Marx did not want to spend his own funds to travel to the courthouse, since local counsel could inform the court of his client's illness and ask for a continuance. Unable to contact local counsel, he called the judge's chambers immediately before trial and told a law clerk that he had not been paid and that his client was probably hospitalized. Marx then spoke briefly to the assistant United States attorney, relating that he had not been paid. The call was interrupted before he could add that his client was ill and apparently hospitalized.

The district court noted that Marx had been present at his client's arraignment when the trial was scheduled. It acknowledged that Marx had told the law clerk about his client's hospitalization. The court, however, found that the actual reason for Marx's absence was his disagreement with his client over financial arrangements. It also found that Marx's misbehavior materially interfered with the trial and resulted in an obstruction of the administration of justice.

On appeal, Marx contends he did not cause an obstruction of justice nor did he act with criminal intent. He claims that the trial commenced as scheduled, with his client represented by local counsel. He asserts that if he had been present, he would

1. Marx filed a motion to withdraw as counsel, but it was not received by the court until after the trial.

2. The court tried the case in the defendant's absence, pursuant to our decision in *United States v. Peterson,* 524 F.2d 167, 182–86 (4th Cir. 1975). The defendant remains a fugitive.

3. Marx submitted an affidavit from his secretary corroborating that his client had become ill in the office.

4. The client had not notified local counsel that he was ill. Instead, he sent a message that he had retained a new attorney and that he would come to Virginia Sunday night for the trial on Monday.

have sought a continuance and permission to withdraw. Marx also argues that his belief in his client's illness was a reasonable explanation for his failure to come to the trial at his own expense.

■ Title 18 U.S.C. § 401(3) authorizes a federal court to punish as contempt of its authority "[d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." Criminal intent is an essential element of the offense. *See Sykes v. United States,* 144 U.S.App.D.C. 53, 444 F.2d 928, 930 (1971). After carefully reviewing a number of authorities, Judge Cummings recently defined this intent as "a volitional act done by one who knows or should reasonably be aware that his conduct is wrongful . . . ." He added, "Of course, an actual design to subvert the administration of justice is a more grievous and perhaps more culpable state of mind, but proof of such an evil motive is unnecessary to establish the required intent." *United States v. Seale,* 461 F.2d 345, 368–69 (7th Cir. 1972). Consequently, a lawyer's willful absence from his client's trial without a legitimate reason is contemptuous. His disobedience to the order of the court setting the trial date violates 18 U.S.C. § 401(3). *See In re Niblack,* 155 U.S.App.D.C. 174, 476 F.2d 930, 932 (1973).

It is undisputed that Marx knew the date scheduled for the trial of his client's case and that he willfully failed to appear. The critical issue, therefore, is whether he acted with criminal intent. The record establishes that he did.

■ The evidence supports the district court's finding that Marx failed to appear because he had not been paid. Marx's conversation with local counsel on the Friday prior to trial disclosed that, even before his client phoned about entering the hospital, Marx had decided not to appear. Furthermore, he did not inquire about the identity of his client's physician or verify his client's hospitalization. He could not justifiably assume that the court would be willing to grant a continuance simply on his client's indefinite and unverified statement that he planned to be hospitalized. Indeed, Marx,

himself, seems to have suspected his client's excuse. At the contempt hearing, he stated:

I told him, I said, "Phil, Monday is trial date. Now if you are ill, fine. That is a good excuse. I am sure that the judge will understand. But you had better be ill because that is the judge, if you are convicted, who is going to sentence you."

Likewise, Marx could not reasonably assume that the court would grant leave to withdraw on the morning of the trial solely because he had not been paid. We, therefore, conclude that Marx knew, or reasonably should have known, that his failure to appear was wrongful. This culpability establishes the requisite criminal intent to sustain his conviction of contempt. *See United States v. Seale,* 461 F.2d 345, 368–69 (7th Cir. 1972); *In re Niblack,* 155 U.S.App. D.C. 174, 476 F.2d 930, 932 (1973); *cf. In re Marshall,* 423 F.2d 1130 (5th Cir. 1970).

■ Marx also contends that the notice of the criminal contempt charges did not comply with Rule 42(b) of the Federal Rules of Criminal Procedure. Under this rule, the notice should state "the essential facts constituting the criminal contempt charged and describe it as such." Although the show cause order did not specify that Marx was charged with criminal conduct, it informed him that he was charged with contempt for failure to appear at his client's trial.

Marx never raised any objection to the notice in the district court. Even after he had been convicted and sentenced for criminal contempt, he did not complain in his motion for rehearing that he had been misled by the criminal nature of the proceedings. Consequently, Marx may raise the issue on appeal only if the insufficiency of the notice was plain error. Fed.R.Crim.P. 52. Marx should have realized that the proceedings were not designed to serve the remedial purposes that characterize civil contempt. *See Carbon Fuel Co. v. United Mine Workers,* 517 F.2d 1348, 1349 (4th Cir. 1975). Since the trial had ended with his client's conviction, the contempt charge rests on the power of the court to vindicate

its authority by imposing a punitive, unconditioned sentence in a criminal proceeding. *See Richmond Black Police Officers Ass'n. v. City of Richmond,* 548 F.2d 123 (4th Cir. 1977). ˙Because the nature of the charges could be readily ascertained from the notice, failure to specify criminal contempt was not plain error. *See United States v. United Mine Workers,* 330 U.S. 258, 297–98, 67 S.Ct. 677, 91 L.Ed. 884 (1947).

■ Marx's hearing also comports with the requirements of due process. After receiving notice of the charge, he was allowed reasonable time for the preparation of his defense. At the hearing, he had an opportunity to testify and to present other evidence. The judge was not required to disqualify himself, because Marx's absence was not a personal affront which would constitute "disrespect to or criticism of a judge" within the meaning of Rule 42(b). *In re Lamson,* 468 F.2d 551, 553 (1st Cir. 1972); *cf. Mayberry v. Pennsylvania,* 400 U.S. 455, 465–66, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971).

The judgment of the district court is affirmed.