**UNITED STATES of America,
Plaintiff/Appellee,**

v.

**John Allen POWERS et al. Defendants,**

**William Nichols, Contemnor/Appellant.**

**No. 79–1697.**

United States Court of Appeals,
Ninth Circuit.

Submitted April 17, 1980.
Decided Oct. 6, 1980.

Gary Peter Klahr, Phoenix, Ariz., for contemnor/appellant.

Truman R. Young, Phoenix, Ariz., for plaintiff/appellee.

Before TANG, SKOPIL and FARRIS, Circuit Judges.

SKOPIL, Circuit Judge.

### INTRODUCTION

This is an appeal from a ninety–day criminal contempt sentence. Contemnor William Nichols argues that the district court exceeded its authority under Fed.R.Crim.P. 42 by incarcerating him without bail pending a contempt hearing and by holding the contempt hearing two days after conclusion of the trial. Our review of the record convinces us that the district court confused the various forms of contempt proceedings. We find, however, that the court's actions were all part of one criminal contempt proceedings and that any resulting confusion did not prejudice Nichols' notice of a criminal contempt charge or his ability to prepare a defense. We affirm.

### FACTS

William Nichols was called as a witness in a criminal case. When called to the stand to testify on September 12, 1979, Nichols refused to answer any questions on the ground that his testimony might incriminate him. The government offered Nichols immunity, which the court characterized as "transactional". The government's offer of immunity at that point in the trial was rejected by the court. The prosecutor lacked authority to grant the immunity.

On September 14 the government filed a motion to compel the testimony of Nichols. Approval of the offer of immunity had been obtained from the Department of Justice. The immunity approved, however, was "use" immunity, not the transactional immunity originally proposed. Nichols' attorney objected to the narrower form of immunity. Nevertheless, the court accepted the grant of use immunity and rejected Nichols' argument that his refusal to testify was justifiably based on fear of reprisal. Nichols was told repeatedly that his refusal to testify could result in a judgment of contempt and a jail sentence. Nichols' attorney asked for a clarification of the court's contempt powers:

ATTORNEY: Could I inquire of the Court what the court interpreted summary contempt powers to be, for the duration of the trial, for a fixed period of time?

COURT: The Court notifies the defendant that the court would incarcerate the defendant for the balance of the trial and set a hearing date regarding the contempt charges and possible sentence as a result thereof.

ATTORNEY: This is civil contempt, non–criminal contempt charge, triable by a jury?

COURT: That is correct.

Shortly after the above dialogue the United States Attorney sought further clarification of the possible contempt charges against Nichols:

U.S. ATTORNEY: Could I clarify one thing for the Government, please. Is it the government's understanding that the court, should the witness refuse to testify, incarcerate the witness for the duration of the trial pursuant to provisions in Title 28? At that time the Court would set a hearing pursuant to Federal Rules of Criminal Procedure 42(a) [sic] and then hold any other proceedings pursuant to the contempt, pursuant to . . . Rule 42(a) [sic].

COURT: That is the court's intent.

Nichols again took the stand and refused to testify. The court questioned Nichols to make sure he understood the consequences of his refusal to testify. When it became clear that Nichols realized the consequences of his decision but refused to testify, the court found him in contempt. A contempt order, prepared by the court, stated that Nichols was found "summarily in civil contempt of this court". He was ordered incarcerated for the balance of the trial and until a hearing was held to determine "further punishment." The hearing was set for September 20.

The trial proceeded without Nichols' testimony. On September 18 the trial ended, but Nichols remained in custody.

On September 20 the contempt hearing was held. It was announced as a hearing for "civil contempt". Attorneys for both sides immediately sought clarification. A lengthy discussion took place to define the type of contempt that had transpired.[1] Af-

---

1. Relevant portions of the transcript are reproduced:

"Attorney: . . . I understand that since this is a summary adjudication, the adjudication is over, the only indication is a mitigation or aggravation hearing. . . .

Court: . . . [Y]our assumption is correct . . . . .

. . . . .

U. S. Attorney: Your Honor, the Government's understanding . . . at this time the Court is proceeding pursuant to Rule 42, Federal Rules of Criminal Procedure, as to this contempt.

Court: The court is proceeding under that procedure but the court is proceeding in the nature of a civil contempt, not criminal contempt, which is the Court's understanding of the law in a situation such as that before us.

Attorney: My understanding, Your Honor, in regard to civil contempt is that that would only then apply to him, . . . the trial having concluded, I would move to dismiss further proceedings. I understand you were proceeding as summary criminal contempt rather than civil contempt. Civil contempt, the man has spent days in jail and there is no longer a trial in jeopardy.

Court: . . . The matter before the Court now is not for the proof of the contempt but for the punishment therefore. The Court gave the defendant notice prior to the Court's order of incarceration that if he refused to obey the Court's order and testify, that he would be punished therefore and it would be a matter of contempt.

The witness understood that when he refused to testify and so indicated.

Attorney: What I want to clarify is between section 4101 [sic] of Title 18 and Rule 42. I presume that actually then you are not proceeding under Rule 42 which is entitled Criminal Contempt but rather 18 U.S.C. 4101 [sic], the United States shall have the power to punish anyone. I presume you are proceeding under number three.

. . . It [Rule 42(b)] also provides that the defendant is entitled to bail, which I understood Your Honor did not entitled him prior to today. I don't think we are proceeding under 42(b). I really do need to have it clarified, I think, whether it is civil or criminal.

Court: First of all, . . ., with the witness' refusal to testify under the circumstances, the court finds it was not a disrespectful act, although he disobeyed the court's order. That is not in this court's mind what is intended by the language in Rule 42. Secondly, even though the Court has said it, it's the court's intent that this matter is a civil contempt. Nonetheless, the court believes that that must be read in conjunction with Rule 42 insofar as the procedure is concerned.

The record may note this court believes that Rule 42 has been compiled with in that defendant was given notice of the precise act which this court would consider contempt of Court, knowing that, he then disobeyed the Court's order . . . .

ter discussion of relevant statutes and rules the court persisted in calling the contempt civil. The U.S. Attorney then concluded that if the contempt was civil in nature, the court had no discretion except to release Nichols. A short recess was called to allow the court to do some research.

After the recess the court announced that it had reviewed the matter and concluded that Nichols was in criminal contempt. The only question in the court's mind was whether summary disposition under Fed.R. Crim.P. 42(a) was appropriate or if notice and a hearing were necessary. The court determined that summary contempt proceedings would be sufficient, but since proper notice under Fed.R.Crim.P. 42(b) had been given, a hearing would be conducted. Nichols' attorney noted the unfairness to his client of changing the status of the proceedings and challenged the notice given

by the court. The court rejected this argument and stated that Nichols and his attorney were well apprised of the situation.[2]

The hearing was conducted. Nichols and his wife testified that Nichols had refused to testify at the trial out of fear of reprisal to his family. The court rejected this explanation and found Nichols guilty of contempt. Nichols was sentenced to 90 days imprisonment, to begin from the date of his incarceration on September 14. Bail pending appeal was set.

## ISSUES

Nichols argues that the district court exceeded its authority under Fed.R.Crim.P. 42 by incarcerating him without bail pending the contempt hearing and by holding the hearing two days after conclusion of the trial. Inherent in that argument is the

U. S. Attorney: If I could, Your Honor, I may be mistaken as to the remedies available, but if this Court is proceeding as to civil contempt as outlined in Title 28, section 1826, it would appear that Mr. Nichols, if the court is proceeding under that statute, could only be confined for the duration of the court proceedings. It is the Government's position, in view of the nature of the testimony, that [more punishment is warranted], [but] since the Court's proceedings are over, it would appear if my interpretation of that statute is correct that this court has no discretion, would have to release Mr. Nichols at this time.

.    .    .    .    .

I would suggest to the Court that we have to proceed under that Rule [42(b)], otherwise Mr. Nichols has to be released.

Court: If neither counsel cites any cases to the Court, the Court will take a recess for 15 minutes and do some research. The court is in recess.

\*    \*    \*    \*    \*    \*

Court: Gentlemen, the court has reviewed this matter and it appears that under the law, what has transpired here before the court in this case by the witness Nichols is criminal contempt. The only question is whether it is a contempt under 42(a) for summary disposition on summary contempt findings by the court, or whether is it procedure pursuant to notice per *United States v. Wilson*, 421 U.S. 309 [, 95 S.Ct. 1802, 44 L.Ed.2d 186].

The conduct is the subject matter of summary contempt, notwithstanding the law, this court proceeded to give the defendant notice under Rule 42(b) and scheduled the matter for today.

The defendant, . . . further had notice prior to his refusal to obey the court's order to testify which would result in this proceedings and punishment therefor.

The court has at the commencement of the proceedings this date set forth on the record the conduct of the defendant . . . which constitutes the contempt. . . .

To the matter of contempt and to the court's statement as to what transpired, that is the basis for the contempt as set forth by the court". . . .

2. Relevant portions of the proceedings are reproduced:

"Attorney: . . . I don't know whether it would make any difference. Maybe we should receive–a mistake of law is not defense but mistake of fact, Mr. Nichols I believe was acting on the assumption–maybe it was a mere hope–I think it was an assumption that the maximum penalty for his disobedience would be incarceration until the end of the trial. To that extent perhaps there may have been a defect in the notice by you as to the consequences of his acts. It's sort of like in a plea agreement where the court does not tell the defendant the possible sentence, the plea can then be set aside.

Court: The court does not accept that explanation because in this court's mind, the respondent . . . was well apprised of the fact that the matter before this court today was to have the court determine the punishment to be imposed for his refusal, and that the court had incarcerated him pending the termination of the trial and pending these proceedings regarding further punishment." . . .

contention that Nichols was prejudiced by the court's confusion over the types of contempt and the court's failure to follow a proper procedure.

## DISCUSSION

The inherent power of the courts to punish contempt of their authority and to coerce compliance with orders is not disputed. *Ex parte Terry*, 128 U.S. 289, 9 S.Ct. 77, 32 L.Ed. 405 (1888). Nor can it be disputed here that Nichols' refusal to testify is contemptuous behavior punishable by the court. *E. g., United States v. Wilson*, 421 U.S. 309, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975). The court's authority to punish or coerce compliance is not, however, without limitation. *United States v. Abascal*, 509 F.2d 752 (9th Cir.), *cert. denied*, 422 U.S. 1027, 95 S.Ct. 2621, 45 L.Ed.2d 684 (1975); *United States v. Alter*, 482 F.2d 1016 (9th Cir. 1973). The court's powers are defined by statute and limited by the requirements of due process. This appeal requires us to ascertain the nature of the court's power and determine if it was properly exercised.

### I.

Title 18 U.S.C. §§ 401 and 402[3] provide federal courts statutory authority to punish contemptuous actions. Section 401 applies to both criminal and civil contempt and contains no limitation on the power of the district court to impose fine *or* imprisonment for a violation. The district court decision is reviewed for an abuse of discretion in setting punishment. *United States v. Miller*, 588 F.2d 1256, 1259 (9th Cir. 1978), *cert. denied*, 440 U.S. 947, 99 S.Ct. 1426, 59 L.Ed.2d 636 (1979); *In re Scott*, 605 F.2d 736 (4th Cir. 1979). Because there is no statutory limit on punishment for criminal contempt, we have the power to modify an excessive sentence. *Miller, supra.*

Federal Rule of Criminal Procedure 42 defines procedural requirements for contempt proceedings.[4] Although the rule is labeled "criminal", we have previously determined that the procedural safeguards established by Rule 42 apply equally to civil contempt proceedings. *United States v. Alter*, 482 F.2d 1016, 1023 (9th Cir. 1973).

Rule 42(a) allows a judge to punish summarily if the contemptuous activity occurred in the courtroom before the judge. *United States v. Wilson, supra.* We call this "direct contempt". Although the language of the rule does not require that a warning be given, courts have recognized that a warning is favored before the power of the court is exercised. *E. g., United States v. Brannon*, 546 F.2d 1242, 1249 (5th

---

3. Section 401. Power of court

   "A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as

   (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;

   (2) Misbehavior of any of its officers in their official transactions;

   (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command."

   Section 402 is not relevant to this case.

4. Rule 42 CRIMINAL CONTEMPT:

   "(a) Summary Disposition. A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record.

   (b) Disposition upon Notice and Hearing. A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the United States attorney or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. The defendant is entitled to a trial by jury in any case in which an act of Congress so provides. He is entitled to admission to bail as provided in these rules. If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent. Upon a verdict or finding of guilt the court shall enter an order fixing punishment."

Cir. 1977); *United States v. Abascal*, 509 F.2d 752, 755 (9th Cir. 1975), *cert. denied*, 422 U.S. 1027, 95 S.Ct. 2621, 45 L.Ed.2d 684 (1975). In addition, the court must issue a certificate stating the relevant facts supporting the contempt order. *United States v. Marshall*, 451 F.2d 372, 375 (9th Cir. 1971).

■ A summary contempt proceeding under Rule 42(a) is justified when a witness who has been granted immunity refuses to testify. In *United States v. Wilson, supra*, the Supreme Court noted that, although not delivered disrespectfully, a witness's refusal to testify after receiving immunity constituted contemptuous conduct and plainly fell within the language of Rule 42(a). This circuit has held, however, that application of summary punishment for contempt should be narrowly limited. *United States v. Abascal, supra* at 755–56. This is necessary since due process requirements of notice and hearing need not be observed in a summary contempt proceeding. Recognizing this point, the Supreme Court warned that trial judges must first consider the feasibility of coercing testimony through the imposition of civil contempt before resorting to criminal contempt. "Only the least possible power of the court adequate to the end proposed should be used in contempt cases." *Wilson, supra* 421 U.S. at 319, 95 S.Ct. at 1808. *See also Shillitani v. United States*, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966).

■ Most direct contempts and all contempts occurring outside the courtroom (indirect), must be dealt with in accordance with Rule 42(b). That rule defines the procedural requirements of hearing and notice for criminal contempt. *United States v. Leyva*, 513 F.2d 774, 777–78 (5th Cir. 1975). Unlike summary contempt, Rule 42(b) requires that a hearing be held to determine if a person should be held in criminal contempt. Notice must be given of the time and place of the hearing. Simple notice is all that is required. *Yates v. United States*, 316 F.2d 718, 723 (10th Cir. 1963). Oral notice to the party in court is sufficient. *In re Allis*, 531 F.2d 1391 (9th Cir.), *cert. denied*, 429 U.S. 900, 97 S.Ct. 267, 50 L.Ed.2d 185 (1976). The purpose of notice is to inform the contemnor of the nature of the charge and enable the contemnor to prepare a defense. *United States v. Hawkins*, 501 F.2d 1029, 1031 (9th Cir.), *cert. denied*, 419 U.S. 1079, 95 S.Ct. 668, 42 L.Ed.2d 674 (1974). Rule 42(b) does not establish a definite time period to enable the contemnor to prepare a defense. Short periods of time have been held sufficient to allow for preparation. *E. g., In re Allis, supra* (ten minutes preparation time adequate); *United States v. Hawkins, supra* (one day sufficient). Obviously a "reasonable" time will vary according to the circumstances of the case. *United States v. Alter, supra* at 1023. This circuit has held that absent a showing by the government of a compelling need to shorten the time, the five–day notice periods of Fed.R.Crim.P. 45(d) and Fed.R.Civ.P. 6(d) should be used. *Id.*

■ Rule 42(b) also establishes a right to bail and trial by jury. The right to jury trial is not absolute, however. Only prosecutions for "serious" criminal contempts are subject to the right of trial by jury. *Bloom v. State of Illinois*, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968). A six–month criminal contempt sentence has been held to not be so "serious" as to warrant a trial by jury. *Cheff v. Schnackenberg*, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966).

■ Title 28 U.S.C. § 1826 [5] provides that a court may summarily order a recalcitrant

---

5. 28 U.S.C. § 1826: Recalcitrant Witnesses

"(a) Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to testify or provide other information, including any book, paper, document, record, recording or other material, the court, upon such refusal, or when such refusal is duly brought to its attention, may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony or provide such information. No period of such confinement shall exceed the life of

(1) the court proceeding, or

(2) the term of the grand jury, including extensions, before which such refusal to comply with the court order occurred, but in no event

witness to be confined until he or she is willing to give testimony or provide required information. The period of confinement cannot, however, exceed the shorter of the life of the court proceeding or eighteen months. The court's power is civil in nature and does not affect additional criminal contempt powers under 18 U.S.C. § 401. *Yates v. United States*, 355 U.S. 66, 78 S.Ct. 128, 2 L.Ed.2d 95 (1957); *United States v. United Mine Workers of America*, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947).

■ Although the civil contempt proceeding under section 1826 is summary in nature, courts have determined that the contemnor is entitled to necessary due process protections. *E. g., In re Grand Jury Proceedings*, 600 F.2d 215, 217 (9th Cir. 1979). Since the statute allows a contemnor to refuse to testify for "just cause", a court must allow that person the opportunity to present reasons for refusal to testify. *In re Brummitt*, 608 F.2d 640, 643 (5th Cir. 1979), *later appeal*, 613 F.2d 62 (5th Cir. 1980), *cert. denied*, —— U.S. ——, —— 100 S.Ct. 2990, 3038, 64 L.Ed.2d 856, 65 L.Ed.2d 1130 (1980). This circuit has held that in a contempt proceeding, whether denominated civil or criminal, the alleged contemnor is entitled to the procedural safeguards of notice and a reasonable time to prepare a defense. *United States v. Hawkins, supra* at 1031; *United States v. Alter, supra*, at 1023.

We turn now to the events in this case to ascertain the nature and therefore the consequences of the contempt sentence imposed upon Nichols.

## II.

The district court apparently confused the various types of contempt. Nichols was first held "summarily in civil contempt." He was not, however, released at the termination of the trial proceedings. Although the contempt hearing was announced as

civil, the judge, after debate with all attorneys, declared that Nichols was in criminal contempt. The confusion is not uncommon. *E. g., United States v. Hughey*, 571 F.2d 111 (2d Cir. 1978); *United States v. Marx*, 553 F.2d 874 (4th Cir. 1977); *United States v. Rizzo*, 539 F.2d 458 (5th Cir. 1976); *Clark v. Boynton*, 362 F.2d 992 (5th Cir. 1966). It does, however, raise the possibilities that the notice of the contempt charge was inadequate and that the contemnor was unable to properly prepare a defense. To address these possibilities we determine from the "totality of the circumstances" what form of contempt proceeding was proper and what form was actually used. *United States v. North*, 621 F.2d 1255 (3d Cir. 1980) (*en banc*); *United States v. Hughey, supra* at 115.

■ A court's characterization of its proceedings is but one factor to consider in determining the true character of contempt proceedings. *Lewis v. S.S. Baune*, 534 F.2d 1115, 1119 (5th Cir. 1976). We must review the record to determine what type of contempt proceeding took place if the purpose of the contempt punishment is not clear from the face of the court's order. Problems arise when it is unclear what form of contempt proceedings was contemplated by the court or when the court mislabels the proceedings. It is essential that a determination be made at the earliest practicable time in order that the proceedings are conducted in accordance with appropriate rules, statutes, and due process requirements.[6] *Richmond Black Police Officers v. City of Richmond*, 548 F.2d 123, 126 (4th Cir. 1977); *Skinner v. White*, 505 F.2d 685 (5th Cir. 1974).

■ We recognize that it is not the nature of the contemnor's actions that determines the form of the contempt proceedings. *E. g., Latrobe Steel v. United States*

shall such confinement exceed eighteen months."

6. The standards of proof are also affected. In a civil contempt action the proof of the defendants' contempt must be clear and convincing, a higher standard than the preponderance of the

evidence standard in most civil cases, but less than the beyond the reasonable doubt standard of criminal contempt proceedings. *See United States v. Rizzo*, 539 F.2d 458 (5th Cir. 1976). The level of proof is not at issue, however, in the instant case.

*Steelworkers*, 545 F.2d 1336, 1342–43 (3d Cir. 1976). The difference between criminal and civil contempt is in the intended effects of the court's punishment. *United States v. Asay*, 614 F.2d 655, 659 (9th Cir. 1980); *United States v. Hughey*, 571 F.2d 111, 114 (2d Cir. 1978), *citing Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911). Actions and proceedings need not be wholly civil or wholly criminal and the choice of one label does not prevent application of both forms of contempt punishment. For this reason no distinct line can be drawn between civil and criminal contempt. Each shares the other's attributes. The same conduct may result in both civil and criminal contempt charges. *United States v. United Mine Workers of America*, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1946).

▮ Punishment for civil contempt is usually considered to be remedial. The penalty is designed to enforce compliance with a court order. *In Re Timmons*, 607 F.2d 120, 124 (5th Cir. 1979). For that reason civil contempt punishment is conditional and must be lifted if the contemnor obeys the order of the court. *Shillitani v. United States*, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966). The term of punishment for civil contempt cannot extend beyond the trial proceedings since at the termination of the trial the contemnor's actions can no longer be purged. *Shillitani, supra* at 371, 86 S.Ct. at 1536.

▮ Criminal contempt is established when there is a clear and definite order of the court, the contemnor knows of the order, and the contemnor willfully disobeys the order. *Chapman v. Pacific Tel. & Tel. Co.*, 613 F.2d 193, 195 (9th Cir. 1979). The penalty is punitive in nature. It serves to vindicate the authority of the court and does not terminate upon compliance with the court's order. The punishment is unconditional and fixed. *In re Timmons*, supra at 124.

▮ In this case the district court first termed the contempt civil in nature. The order did not, however, contain any condi-tional language ordinarily characteristic of civil contempt punishment. This alone does not transform it into a criminal contempt. *See United States v. Hughey*, 571 F.2d 111, 115 n. 10 (2d Cir. 1978) (finding that no court has held that the absence of conditional language requires treating the contempt as criminal). The district court order also explicitly stated that Nichols was to be held until the end of the trial and until a hearing was held. This is inconsistent with civil contempt sanctions. If the contempt was solely civil, or even a combination of civil followed by criminal contempt, Nichols should have been released at the termination of the trial. *E. g., United States v. Hughey, supra*. We also note the obvious intention of the district court to punish Nichols for his refusal to testify. A civil contempt sanction would not have accomplished this purpose. Nichols would have been confined only four days. The lack of a purge clause in the district court's order also suggests that the court did not intend to treat the contempt as civil. From the totality of circumstances it appears that Nichols' behavior was treated as criminal contempt.

At the contempt hearing the district court concluded, after prolonged discussion with attorneys, that Nichols' behavior could be treated in a summary criminal contempt proceeding. Nevertheless, since notice had been given and a hearing set, the court proceeded under Rule 42(b). We praise the court's decision to afford the contemnor the protections provided by Rule 42(b). *See United States v. Wilson*, 421 U.S. 309, 95 S.Ct. 1802, 44 L.Ed.2d 684 (1974); From our examination of the record, however, it appears that the district court failed to adhere to the procedures defined in Rule 42(b). Rule 42(b) provides that the contemnor is entitled to bail. None was provided in this case. Rule 42(b) also contemplates an adjudication of guilt or innocence on the contempt charge. Although the court ultimately found Nichols guilty of contempt, our review of the hearing transcript suggests that the determination of Nichols' guilt had already been made.

We find that the district court confused the various contempt proceedings but essentially followed Rule 42(b). Some aspects of the proceedings, however, closely resembled summary criminal contempt adjudications under Rule 42(a).[7] We have previously determined that the court could have proceeded under either section of Rule 42.[8] *United States v. Wilson, supra.* Keeping in mind that the court was confused and did not adhere strictly to the requirements of a criminal contempt proceeding, we must determine if Nichols was so prejudiced that the contempt sentence should be reversed or modified.

### III.

Nichols' attorney asserted at the contempt hearing that the confusion over the form of proceedings and the last–minute change the day of the hearing was prejudicial to preparation of Nichols' defense. The attorney did not, however, request a continuance in order to properly prepare. ·In some circumstances confusion by the court would be fatal to the contempt judgment. When it is entirely impossible to determine the character of the contempt proceedings, the contempt judgment may be invalid. *E. g., Clark v. Boynton,* 362 F.2d 992 (5th Cir. 1966); *Skinner v. White,* 505 F.2d ·685 (5th Cir. 1974); *Lewis v. S.S. Baune,* 534 F.2d 1115, 1119 (5th Cir. 1976). The judgment may not be invalid, however, if the contemnor should have realized what form of contempt proceeding was contemplated and if adequate notice was given. *E. g., United States v. Marx,* 553 F.2d 874, 876 (4th Cir. 1977); *United States v. Hughey,* 571 F.2d 111 (2d Cir. 1978).

We have held that in both civil and criminal contempt proceedings the contemnor is entitled to notice and a reasonable time to prepare a defense. *United States v. Haw-*

kins, 501 F.2d at 1031. We find that Nichols was not prejudiced by the court's confusion over the form of the contempt proceedings. Although the district court improperly called the contempt "civil", Nichols' attorney was clearly apprised of the nature of the charges against his client. Nichols' attorney objected to the last–minute change in the name of the proceedings. Nevertheless, the attorney presented a defense consistent with a criminal contempt charge. The mitigation defense was properly rejected by the district court. *Dupuy v. United States,* 518 F.2d 1295 (9th Cir. 1975).

Nichols was held without bail during the trial and pending the hearing. Bail on appeal was granted following the hearing and sentencing. Nichols argues that the court exceeded its authority under Rule 42 in ordering Nichols confined without bail. He alleges that his ability to prepare a defense was jeopardized by the lack of bail.

Rule 42(b) expressly states that a defendant is entitled to bail consistent with other rules (*e. g.,* Fed.R.Crim.P. 46). The government argues that Nichols could have been confined without bail under 28 U.S.C. § 1826(a) until the end of the trial. The government agrees with Nichols, however, that he should have been admitted to bail during the period between the end of the trial and the contempt hearing. The question is whether or not Nichols was prejudiced by the court's error in not considering bail prior to the hearing.

We find that Nichols was not so prejudiced by the court's error as to justify reversal or modification of his contempt sentence. If the contempt was treated as criminal, bail should have been considered. *See In re Stewart,* 571 F.2d 958, 965 (5th Cir. 1978). It appeared, however, that Nichols was adequately prepared to present

---

7. The fact that a notice was given and a hearing was conducted after the trial does not alter our conclusion. Delay of the summary contempt judgment until after the trial is proper and in some instances encouraged. *Sacher v. United States,* 343 U.S. 1, 72 S.Ct. 451, 96 L.Ed. 717 (1952); *In re Osborne,* 344 F.2d 611, 616 (9th Cir. 1965).

8. We do not hold that the court can proceed under both sections (a) and (b) of Rule 42. We believe this might give rise to a double jeopardy claim. Because we find that the court proceeded under Rule 42(b) and not under both Rule 42(a) and Rule 42(b), no double jeopardy claim is possible in this case.

a defense and the two–day confinement without bail did not prejudice that preparation.

Nichols urges us to remand the case to the district court with instructions to vacate the sentence of imprisonment of ninety days and to sentence him to time served. A remand would not be necessary. We have the authority to directly review the sentence and revise it. *See United States v. Miller*, 588 F.2d 1256 (9th Cir. 1978), *cert. denied*, 440 U.S. 947, 99 S.Ct. 1426, 59 L.Ed.2d 636 (1979). We decline to do so, however, for we do not find that Nichols was prejudiced by the court's confusion. The notice of the charge against him was adequate. He was afforded an adequate opportunity to prepare a defense.

We affirm the district court's contempt sentence. We do so, however, with a warning that under different circumstances we might find a contempt sanction invalid due to the confusion of the district court. In this case, however, Nichols was not prejudiced by the confusion over the form of the contempt proceedings or by the error in not granting bail. The district court did not abuse its discretion in sentencing Nichols to ninety days imprisonment.

Review by this court could have been greatly simplified if the district court specified the basis on which it was acting. We urge district courts to specify the particular nature of the contempt proceeding and the statutory authority upon which the contempt is predicated. *See United States v. North*, 621 F.2d 1255 (3d Cir. 1980) (*en banc*).

WE AFFIRM.